No reason you should be. Good afternoon, Justices. My name is John Gallagher. Is it? It is. But it is afternoon. Good afternoon to you. John Gallagher appearing on behalf of Petitioner Yevgeny Gansberg. I'd like to reserve two minutes of my time for a moment. I'll keep track on the timer. OK. Petitioner, Mr. Gansberg, Mr. Gansberg is petitioning this court for a review of two decisions by the EOIR, a substantive decision of a denial of asylum and also a denial on a motion to reopen following the denial and the application of asylum. Regarding the asylum decision, I'd like to start out that following the following the discussion from just the previous oral argument, in this case, the immigration judge concluded his opinion with the statement that he would have granted asylum based on the country conditions and the evidence of persecution that the petitioner had suffered in his home country, but for the fact that, as the judge found, he had been convicted of an aggravated felony, and that disqualified him for that release. So this case turns on whether or not the immigration judge's decision regarding the aggravated felony was correct or not. And that turns on whether we take into account what he ruled, appeared to have ruled in the first hearing, and then where he based it on the grand theft auto, right, whether we look only to the oral decision. I don't follow you, John. In his oral decision, he did – he found that the – he found that one conviction that Mr. Hansburg had been convicted of, making a false financial statement, was a – was an aggravated felony because it was a crime of theft for which more than one year of prison time had been imposed. Well, I was just referring to the transcript of the September 30th, 1998, proceeding, where the grand theft auto is back on – comes back into the case. Correct, Judge. And the judge says, so based on that, that is the grand theft auto, simply the respondent continues to be convicted of an aggravated felony, and I would find that to be the case. He probably would still be an aggravated felon even just for the false financial statement, and so on. Which indicates he's relying on both convictions, doesn't he? Well, Judge, I would submit that the Court ought to rely on just the conclusions in the – in the oral decision for reasons that are not enumerated in the decision, but which might be as simple as the judge decided upon reviewing the statute itself that it was not an aggravated felony. Which statute are you speaking of? This is the Penal Code 487H, which is the grand theft auto. Now, it's curious. There's no text of that law in the – in the record of proceedings, and the law was repealed in 1997. So the only evidence of what actual conduct that – that statute entailed was the name of the statute, grand theft auto. Apart from that, I don't know why the judge didn't include the grand theft auto conviction in his oral decision, but the fact is that this Court is – ought to be constrained to looking at the terms of the oral decision in determining whether or not it can be upheld. The immigration judge's decision regarding aggravated felony is flawed because he – and therefore, he should – this Court should find that the judge should have, as he suggested he would have done, granted asylum. In the alternative, it may be even further if this is not a crime involving – if this is not an aggravated felony and under the decision of Golderstein, it may not even be a crime involving moral turpitude, and so the proper remedy would be to return the case to the immigration court to terminate proceedings for failure to establish a – a deportable charge. The immigration found – the immigration judge found that Mr. Candor's conviction for a false financial statement was – was for a theft crime. He was very specific in the oral decision about which the statute was and why – why it – it was an aggravated felony. Now, the – again, because there's no – there's no context to the nature of the offense that Mr. Yevgeny – that Mr. Kanzberg engaged in, we can only look to the language of the statute, which is still a valid penal code section in California, and in – and decide whether there's some sort of conduct which would result in a conviction under the statute which is not – which does not involve theft. And I think that that is a very easy exercise to do. It's a long section, but any person who made a written – a false written statement with intent that it be relied upon for the purpose of procuring the execution of a contract for his own benefit would be guilty of – of a violation under this statute. Now, it would be a stretch to say that such an act would be a theft. Obviously, it is not laudable conduct, but I think the purpose of this – of this statute, which was the basis of the aggravated felony decision, is to punish deceit, not to punish theft or to punish any – any form of conversion. In more concrete terms, Mr. Kanzberg could be guilty of this statute if he had done as little as sign a rental car application asserting that his credit was good in order to – in order to induce a rental car agency to sign a rental contract with him. There's no conversion there. There's no theft, which is an essential part of the aggravated felony decision upon which the – the immigration judge relied in finding, one, that Mr. Kanzberg was deportable from the United States, and, two, that he was, in fact, disqualified from – from political asylum. Regarding the merits of the withholding claim, I'm just going to submit on the record of the – the judge's finding regarding the past – the past persecution and the – the nature of the circumstances regarding persecution of Jews in the Ukraine. There's a number of sites and parallel fact patterns, and in particular, I'd like to point out that Mr. Kanzberg's previous counsel had – had contracted to file an appeal – contracted to file a brief on appeal because the trial counsel had filed a notice of appeal. Mr. Kellogg, the prior counsel, never did that.  on appeal. When the appeal at the BIA was denied, Mr. Kanzberg came to our office to – to seek the next level of review, which was before the Ninth Circuit. Mr. Nieblus and myself did not discover that Mr. Kellogg had not even filed a brief until we retrieved – until we received our copy of the administrative record. The Board of Immigration Appeals denied the motion to reopen for failure to act – for failure to act with due diligence. The Board of Immigration Appeals' decision is a little bit confused because it says that there are two letters connected with our motion to reopen, which we have not – we have not answered, which, in fact, are answered by Mr. Kanzberg's declaration that he had, in fact, never received his file and by the argument in our – in our brief – in our Mr. Kellogg, the previous attorney who we have accused of ineffective assistance of counsel, never communicated that the brief which he filed had been rejected for being late. All right. With that – I have a question on the first part of your argument. Do we give any deference to the BIA's interpretation of what an aggravated felony means under the statute? I think this – I think you have a de novo review on a question of law like that. If they're interpreting their statute, we usually give some deference to what they say that law means. Well, Judge, I'm not certain what the standard of deference would be, although this seems to be a plain reading where their analysis fails. When you have to find some sort of theft in this statute, it just – it just can't be done. It's not a theft statute. So I apologize. I'm not sure of the standard which is applied, but I don't think that this would – that this would fly under any standard, standard of deference. The motion to reopen was seeking what? It was seeking reopening to allow briefs to be filed regarding the – to reopen to allow briefs to be filed. On the IJ's decision. Correct. Okay. You got just a few seconds. Do you want to reserve it for a possible rebuttal? I'll reserve the remainder for a possible rebuttal. Keep in mind what Kobe Bryant was able to do with three seconds left. Tie the game. One. I guess that makes me Detroit, Your Honor. May it please the Court, my name is Scott McIntosh. I'm appearing today on behalf of the Attorney General. Now, there are two – Mr. Kansberg has been convicted of two separate theft offenses. Either one of those offenses is sufficient to bar this Court from exercising it. Well, the question, though, is which one did the IJ rely on, right? Because we can't decide this case on a basis other than the same basis that the IJ did, right? That's certainly correct, Your Honor. At a minimum, we know that the IJ relied on the false financial statement count. In our view, it's also clear when you look at the record as a whole that he also relied on the grand theft auto count. In the portions of the record, the transcript, which we referred to earlier in this argument, the counsel for Mr. Kansberg admitted that the conviction had been reinstated on grand theft auto and admitted those allegations in the charge, in the INS's charge. At that point, from that point on in the litigation, that simply was not a matter in controversy. And so I think the reason that when you look at the oral decision of the IJ that was entered subsequently after the evidentiary hearing, I think the reason you don't see any explicit reference to that is simply that it was no longer in dispute. The point of his oral ---- That's not quite consistent with his earlier statement. I didn't get a chance to read the whole thing. But he says, going back to that September 30th statement about the grand theft auto, he says that based, I would find that to be, he probably would still be an aggravated felon even just for the false financial statement because he got two years for that, and a lot of things fall both under theft and fraud, and probably that would. But I won't have to make that determination with the grand theft auto still in existence. So having said that, he now comes along a year, what, six months later, and says, and proceeds to go off on the false financial statement. So he does ---- You're right, Your Honor. He does go on to address the false financial statement. But why would he do that? Because I think that's germane to the withholding, to whether or not it was an appropriate case for withholding of removal. Bear in mind that in terms of his own authority, while these theft convictions or the two theft convictions disqualified any request for asylum categorically, they did not categorically preclude him from entertaining a request for withholding of removal. And that was, in fact, the point of the evidentiary hearing that Your Honor referred to at a later proceeding. Neither of the two criminal offenses here categorically barred withholding of removal. And so it was appropriate for him, having already dealt with the theft offense, to turn in the subsequent proceeding, the false financial statement offense, to figure out what kind of offense was involved, what his dimensions were, and what bearing it had on withholding of removal. So I think when you look at that ---- That's not what he's saying. He said, I therefore find this an aggravated felony. And based on that finding, I pretermit the asylum application. Yes, Your Honor. He's not referring to ---- There's no additional reference at that point back to the grand theft offense. Well, but he's not talking about withholding of removal at this point. He's talking about asylum application. That's correct, Your Honor. I don't ---- I guess I just don't understand that to amount to a sort of subsilentia withdrawal of what was previously not in contention at all, namely the existence ---- Well, he just forgot about it. Nobody called it back to his attention. I assume they, you know, in one ear and out the other, the way most of us are after we ---- Well, I think ---- I don't think ---- ---- agree on cases. And that's my concern, is that he forgot about it and therefore felt it necessary at this point to base his decision on the false financial statement. Well, I guess I would have two reactions to that or responses, Your Honor. One is, I think, if one can interpret his opinion in more than one way, I would interpret it in one in the way that doesn't, you know, fault him for forgetting things that have been decided in the case. Well, the BIA itself, as I read some of their opinions, has criticized IJs for not putting all of their stuff in their oral decision. They said the Petitioner shouldn't have to go, you know, back through all of the transcripts to find out what the basis of the rulings are. And so we have a very crisp, let's say, very crisp point here. He doesn't go back and pick up even by a hint. Well, maybe there's a hint. I don't know what ---- Well, I think there are the things that we're ---- There's some allusions in there that I think may refer back, Your Honor. But in any event, I think it's ---- this may be a different case in the sense that here there simply was no contention over this point. It might be another matter for you to resolve the point of contention previously, but where the parties essentially agreed, I don't think he needed to make any further reference to it from that point on. If you agree that that is properly part of the case in its current posture, then I think that's the end of this petition for review. Even if you were to conclude that that's not sufficiently tied into the final decision here, one still has the conviction, the undisputed conviction for all financial statements. And that is what's properly found to be a theft defense under this Court's generic so-called generic definition of theft defenses in Corona Sanchez. The basic argument that's being presented by the other side is that when one obtains property by deceit or fraud, one is not engaged in theft. That's simply not the case under the Corona Sanchez. What Corona Sanchez says is if you take property without someone's consent with the intent to deprive them, deprive the owner of the rights and benefits of ownership, you're engaging in a theft defense. Now, if I obtain your property by defrauding you, by lying to you, by fooling you, I have done it without any meaningful consent because you've been deprived of the information you needed to make informed consent, and I've taken your property with the intent of depriving you of the incidence of ownership. That's exactly what the elements of the offense here under the California Penal Code involve. You have to, if you knowingly make a false financial statement, intending to be relied on for the purpose of procuring property, cash, or credit, or loans, I'm paraphrasing, that's the offense. That's quintessential obtaining a property through fraud, but it has the necessary stance or the necessary state of mind and intent that Corona Sanchez calls for. Now, if it occurs... Wait a minute. At the making of the statement, that's the offense, and I'm not real familiar with the statute, but my recollection under, like, for instance, the federal fraud statute is if you make that misrepresentation with that intent, it's not an element of the offense whether or not loss or taking of property results. Is that true? That's only true in terms of the federal statute. I don't know whether that's true under the state law, but bear in mind here the only ground in the proceedings below, and indeed in the briefing here, the only ground that's been raised for saying that this statute does not come within Corona Sanchez is the intent requirement, not whether property is actually obtained or not. There was no representation below that the offense doesn't provide, doesn't require taking or that no taking of property occurred here. The only... If you go back to the briefs that you have in front of you, the only objection here was that the requisite intent was not present, that there was not a sufficient intent to defraud or intent to take property away. Would the Corona Sanchez framework really apply here? That was a federal sentencing case. We were looking at aggravated felony for the purpose of federal sentencing. Here we have a federal statute under the jurisdiction of the Immigration Service. Wouldn't there be some deference to the administrative decision without regard to the Corona Sanchez framework? I think that's certainly an appropriate way to view it, Your Honor. I think it comes out the same way either way, whether one views Corona Sanchez as the governing framework or whether one defers to the... Well, I was thinking that the administrative framework may be less structured perhaps than Corona Sanchez. In other words, the agency can look at the statute, the purpose of the statute, how it fits in the total immigration picture as a, yes, for our purposes, this is a death defense and constitutes an aggravated felony. I think that's correct, Your Honor. So again, you have... Has any case so held that? I'm not aware of a case... I'm sorry, Your Honor. Anywhere. I'm not aware of a case holding one way or the other on that point. So as I say, if you conclude that either of these two offenses is a theft offense, then that is the end of this Court's jurisdiction in this case, and the petitions for review have to be denied. For that reason, there's no need for this Court, and indeed no occasion for this Court, to review the determinations by the immigration judge regarding the likelihood of prosecution or past persecution. But even if this Court had occasion to do that, which we don't think it does, the administrative or the immigration judge do establish that the events that had taken place in the past with respect to Mr. Hansburg did not constitute persecution, didn't rise to that level, and that he had not shown that it was more likely than not that he will be persecuted himself if he returns to Ukraine in the future. And because of the weakness of his position on all those points, whatever errors his counsel may have made in pursuing his rights before the board in this appeal didn't result in any prejudice. And again, regardless of how one would come out on that question, there is a jurisdictional bar at the beginning of this case, and if you agree that that bar applies, then that disposes the case. I'm sorry. Thank you, Your Honor. Kennedy. But I have a question for you. On the motion to reopen, what is your response to Mr. Gallagher's argument that the BIA's reliance on these two letters from the former attorney? Well, Your Honor, as I understand Mr. Gallagher's brief, the only — the critical piece of information — there's no dispute that some materials were provided, and the question is what was provided and what wasn't. You mean provided to the Petitioner? Correct, to the Petitioner, exactly. And what his brief says is that the materials provided to the Petitioner did not include the orders of the Board, which denied their request to file the brief. What Petitioner conspicuously doesn't say, as it said at any point in this case, is that the materials that were provided did not include the motions filed by his counsel for permission to file in an untimely fashion. Now, I don't have that — I don't have those files myself. I don't know what's in them, but the fact that there's no representation of that, I think, speaks to the issue of timeliness and prejudice. I notice that the rule adopted in Corona-Sanchez is really taken from a Seventh Circuit case, Hernandez-Mancia v. INS. Does that imply — are you familiar with that case? I'm familiar with the case generally, Your Honor. Is that a — was Seventh Circuit construing BIA-type statute, or was — That I'm not sure, Your Honor. But anyway, just to be clear, in our view, even if Corona-Sanchez provides — We're perfectly — No, I understand. You're saying you still follow that. Thank you, Your Honor. All right. Thank you. Gallagher, you reserved a little time for a bottle. Any questions? Can we answer them in the courtroom? No. I guess we're okay. Thank you very much. We thank both counsels. The case is submitted for decision, then. Next. And thankfully, last and last case on the argument calendar. Seuzelt-Seva, I guess. Seuzelt-Seva v. Ashcroft.
judges: Tg Nelson, Tashima, Fisher